GREMILLION, Judge,
dissents and assigns written reasons.
|tTwo appeals of separate judgments form the controversies at issue. Joe and Helena Oliver, individually and on behalf of their minor child, Taylor, appeal the trial court’s declaratory judgment in favor of the State of Louisiana declaring the Medical Malpractice Act’s limitation on recovery (the cap), La.R.S. 40:1299.42(B), constitutional and the judgment entered in their underlying tort claim. The Louisiana Patients’ Compensation Fund (PCF) appeals a judgment on the Oliver’s underlying tort claim. Additionally, defendant/appellant, Susan Duhon, has raised in the appeal a peremptory exception of res judi-cata in which she asserts that the Olivers only appealed the declaratory judgment and not the judgment on the verdict in the underlying tort claim.
Judges Cooks and Thibodeaux take pains to state that their decision is limited in its application to nurse practitioners. Judges Saunders and Painter maintain that nurse practitioners are not covered at all. However, these findings are problematic. The Olivers never assigned as error the application of the cap to nurse practitioners; rather, they want this court to declare that the cap itself, by virtue of its diminished value, is unconstitutional. We are generally precluded from considering issues not assigned as error. See Uniform Rules-Courts of Appeal Rules 1-3 and 2-12.4.
Additionally, Judges Cooks and Thibo-deaux’s reasoning is by no means limited to the circumstances of nurse practitioners. It could apply to any health care provider. |2In fact, they specifically take aim at health insurers’ “dividends,” doctors’ “incomes,” and the alleged “escalating profits” of the entire “medical profession.”
Furthermore, if the cap applies to nurse practitioners, its unconstitutionality necessarily affects all other qualified health care providers. I believe the cap does apply to nurse practitioners. The legislature recently enacted Act 14 of the 2009 Regular Session, amending La.R.S. 40:1299.41 effective August 15, 2009, to include nurse practitioners among those providers specifically listed in the definition of “health care providers.” The significance of this amendment is that, were nurse practitioners not already covered by the act, the cap would not apply retroactively to Duhon.
The field of nursing has long been regulated in Louisiana, as it is in most states. Nurse practitioners are required to be registered nurses. La.R.S. 37:913. The MMA has long applied to registered nurses.
The legislative history of the 2009 bill persuades me that the purpose of Act 14 was simply to clarify the MMA. The original author, Representative Willmott, testi- *896 fíed before the House Committee on Civil Law and Procedure that the bill was intended to clarify the law. In his view, nurse practitioners were already covered by the MMA, as the law requires that they be registered nurses before becoming nurse practitioners.[1] He spoke in favor of the bill from the House well and stated that its purpose was clarification.[2] Similarly, Senator Heitmeier, who moved for the bill’s final passage by the Senate, advised that body that the purpose of the bill was to clarify the law.[3] I agree. Accordingly, the MMA applies to nurse practitioners ^notwithstanding the majority’s contrary finding.
Because Judge Cooks bases her ruling on the equal protection issue alone, she chooses to not address the other grounds upon which the Olivers claim the cap is unconstitutional. While I would find that the cap withstands all the Olivers’ claims of unconstitutionality, I will follow Judge Cooks’ lead and address only the equal protection claim.
EQUAL PROTECTION
Judges Cooks and Thibodeaux find that the cap violates the equal protection clause of the Louisiana Constitution. I disagree. The cap forms one provision of the MMA, La.R.S. 40:1299.41, et seq., enacted by Act 817 of 1975. Its amount has not been increased. Since 1975, according to the economic experts who testified on the Oli-vers’ behalf, the value of the cap adjusted for inflation has reduced the purchasing power of the $500,000 to the 1975 equivalent of $125,000. The Olivers argue that the effect of inflation on the value of the cap renders it a constitutionally infirm remedy.
Louisiana Constitution art. I, § 2 provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
Because the MMA represents a legislative classification based upon physical condition, it is not entitled to the presumption of constitutionality normally afforded a statute. Sibley v. Bd. of Sup’rs. of La. St. Univ., All So.2d 1094 (La.1985). In the case of classifications based upon birth, age, sex, culture, physical condition or political ideas or affiliations, the burden of proving them constitutional is shifted to J^the proponent of the classification. Id. The classification must be proven to substantially further an important state interest. State v. Fleury, 01-871 (La.10/16/01), 799 So.2d 468.
The State and Duhon contend that the Louisiana Supreme Court has declared the cap constitutional, and that ruling is binding on this court.[4] See Butler v. Flint Goodrich Hosp., 607 So.2d 517 (La.1992). Judge Cooks finds that we are not bound by the ruling of this state’s supreme court, but is persuaded by the supreme courts of Wisconsin, Alabama, and New Hampshire. She premises her decision to not follow *897 Butler on the fact that it was decided 18 years ago. The conditions that prevailed when it was decided still exist today: severely injured patients are ensured that their doctors will carry medical malpractice insurance; they still have access to a solvent pool of recovery in the PCF; and, all medical care and related expenses will be paid. Ironically, two of the three out-of-state opinions relied upon by Judges Cooks and Thibodeaux are older than Butler.
According to the evidence at trial, while the value of the general damages element of the cap has diminished in the intervening years, the element of recovery of future medical care from the PCF has dramatically increased because the costs associated with health care have risen significantly faster than inflation. My colleagues have claimed their privilege to discount this evidence, but to say this evidence does not exist in the record is simply incorrect.
The Butler decision involved a challenge by the patient to the cap based on the equal protection clause and the adequate remedy component of the due process clause of the state constitution. The patient did not argue that the amount of the cap | r,rendered it unconstitutional, but rather its existence. The court found that the aforementioned benefits represented a “reasonable but imperfect balance between the rights of victims and those of health care providers.” Butler, 607 So.2d at 521. This represented a legitimate state interest. Id. The cap, said our supreme court, did not violate either the federal or state constitutions. Id.
The “quid pro quo” recognized in Butler still exists. The patient is guaranteed the three aforementioned benefits: greater likelihood her health care provider will carry, and be able to carry, malpractice insurance; the availability of additional recovery from a solvent pool; and, the payment of all medical and related expenses. Id. These benefits do not depend on the amount of the cap. If, then, the dollar value of the cap has diminished, that cannot rise to the level of a constitutional infirmity. Recourse for its adjustment lies in the legislature and not the courts.
An additional and corollary argument in the present matter is the deprivation of the loss of consortium claims of Joe and Helena Oliver. By operation of the cap, the Olivers’ claims for loss of consortium are also subject to the cap. They will then recover none of the $238,000 awarded to them individually.
The cap is no less valid when applied to the Olivers’ claims than it is when applied to Taylor’s. The same benefits exist: the Olivers will not bear Taylor’s medical expenses into the future. The trial evidence demonstrates that this benefit will far outweigh the value of the $233,000 they would receive in general damages. Accordingly, it is not an arbitrary, capricious, or unreasonable classification.
CONCLUSION
The cap does, indeed, fall most heavily upon those most seriously injured. However, the Louisiana Supreme Court has recognized that such a classification of | (¡persons by physical condition is suspect, and nevertheless has held that an important state interest is furthered by the cap. That the cap may now be seen by many as insufficient does not negate the benefits the cap ensures all patients: greater likelihood that all health care providers will be insured; a solvent pool from which to collect; and, the payment of all future medical expenses arising from acts of medical negligence, a benefit that potentially far exceeds the value of any award of general damages.
*898 The cap does not violate a patient’s right to access to the courts or to an adequate remedy. It represents an imperfect but reasonable “quid pro quo” between qualified health care providers and their patients. There exists no constitutional guarantee of a tort victim’s recovery of a particular remedy, but merely the guarantee of a right to pursue a remedy.
The cap, which has gone without adjustment for 34 years, should be adjusted by the legislature. However, while the amount of the cap is now worth substantially less than it was in 1975, it is not constitutionally infirm. Still, the legislature should consider the burden the cap places on its injured citizens and raise it. I also would respectfully suggest that the legislature index the cap in a responsible manner, which would obviate cases like the one before us now.
The critical question before this court is not whether problems with the medical malpractice cap should be addressed. The answer to that questions is clearly, “Yes.” Rather, the question, I submit, that was wrongly answered by Judges Cooks and Thibodeaux is who should address the problem. The answer to that question is not this court, but the legislature.
Therefore, I would affirm the judgment of the trial court declaring the cap ^constitutional and the jury’s verdict awarding damages.

. http://house.louisiana. gov/mar-chive/Ram/RamMay09/0504_09_CLP.ram

. http://house.louisiana.gov/marchive/Ram/ RamMay09/ 051 l_09_Day09_2009RS.ram

. http://senate.legis.la.us/video/2009/June/ 060209_schramb_P2.ram

. Duhon filed a brief adopting by reference the argument of the State in its brief.